**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MYRICK ELLIOTT,<br><br>Defendant. | Case No. 3:19-cr-00112-4-TMB-DMS<br><br>ORDER ON DEFENDANT ELLIOTT'S<br>MOTION TO SEVER<br>(DKT. 222) |

## I. INTRODUCTION

The matter comes before the Court on Defendant Myrick Elliott's Motion to Sever (the "Motion").[1] The Government filed a Response in opposition to the Motion.[2] Oral argument was not requested and the Court finds the matter suitable for disposition without oral argument. For the following reasons, Elliott's Motion at Docket 222 is **DENIED without prejudice**.

## II. BACKGROUND

On October 15, 2019, the United States filed an Indictment against Elliott and his co-defendants for one count of Drug Conspiracy in in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(a).[3] Elliott was arrested on October 26, 2019, and, on October 30, 2019, the Court ordered Elliott remain detained pending trial.[4] The Court initially set trial for January 6, 2020, but

---

[1] Dkts. 222 (Motion); 223 (Memorandum in Support of Motion).

[2] Dkt. 226 (Opposition).

[3] Dkt. 12 at 2 (Indictment).

[4] Dkt. 26 (Order of Detention).

Defendants (including Elliott) moved to continue the trial to a later date.[5] The Court granted Defendants' Motions to Continue and reset set trial for April 20, 2020.[6] On March 20, 2020, Elliott moved to extend the pretrial motion deadline by 30 days, which was granted by Chief Magistrate Judge Deborah Smith.[7] However, beginning on March 22, 2020, the Court issued a Miscellaneous General Order ("MGO") and continued all criminal jury trials as a result of the COVID-19 pandemic.[8] The Court issued subsequent MGOs to continue criminal jury trials throughout the pandemic, most recently MGO 20-40, which continues all criminal jury trials through at least March 1, 2021.[9]

On September 18, 2020, the Government filed a Superseding Indictment, which expanded the scope of the drug conspiracy and added additional charges including for Continuing Criminal Enterprise in violation of 21 U.S.C. § 848(a), (b) (Count 1); Money Laundering Conspiracy in violation of 21 U.S.C. § 1956(h) (Count 3); Using Firearm to Commit Murder in Furtherance of Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(a)(iii), (j) (Count 4); and Killing in Furtherance of Continuing Criminal Enterprise in violation of 21 U.S.C. § 848(e)(1)(A) (Count 5).[10] The initial charge for Drug Conspiracy remained and was charged as Count 2.[11] The

---

[5] Dkt. 60 (Text Entry)

[6] *Id.*

[7] Dkts. 92 at 1 (Unopposed Motion to Continue Pretrial Motion Deadline); 97 (Order Granting Unopposed Motion to Continue Pretrial Motion Deadline).

[8] *See* D. Alaska Misc. Gen. Ord. 20-10 (eff. Mar. 22, 2020).

[9] *See* D. Alaska Misc. Gen. Ord. 20-40 (eff. Dec. 23, 2020).

[10] Dkt. 189 at 1–2 (Superseding Indictment).

[11] *Id.* at 1.

Superseding Indictment alleged that the drug conspiracy began in or about January 2017 and continued until October 2019, while the original Indictment only alleged the conspiracy took place from September 25, 2019 to October 2, 2019.[12] Elliott was only charged with Count 2 of the Superseding Indictment, the charge for Drug Conspiracy.[13] On November 20, 2020, the Court declared the case complex, vacated the January 2021 trial date, and reset trial for November 8, 2021.[14]

On November 2, 2020, Elliott filed the present Motion to sever his case from his co-defendants and to assert his speedy trial rights.[15] First, applying the four-factor test outlined by *Barker v. Wingo*, Elliot argues his right to a speedy trial has been violated.[16] The *Barker* factors include (1) the length of delay; (2) the reason for the delay; (3) whether, when and how the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay.[17] As to the first factor, Elliott states that the length of the delay between his detainment in October 2019 and the (now-vacated) trial scheduled for January 2021 is presumptively prejudicial.[18] He next argues that the second factor weighs in his favor because "the Government has added to the delay with its superseding indictment handed down eleven months after Mr. Elliott

---

[12] *Id.* at 6; Dkt. 12 at 2.

[13] Dkt. 189 at 1.

[14] Dkt. 237 (Minute Entry).

[15] Dkt. 223 at 1.

[16] *Id.* at 7; *Barker v. Wingo*, 407 U.S. 514, 532 (1972); *Doggett v. United States*, 505 U.S. 647, 651 (1992) (applying *Barker*).

[17] *Doggett*, 505 U.S. at 651.

[18] Dkt. 223 at 8.

3

was incarcerated."[19] Elliott asserts his right to a speedy trial through the Motion and opposes a continuance.[20] Finally, Elliott argues that due to COVID-19, delaying trial "creates an unacceptable and unnecessary risk to his physical and mental health that would be avoided by granting him a separate trial."[21]

Second, Elliott argues that the spillover evidence from his co-defendants' more serious counts would create prejudice that requires severance.[22] Elliott argues that the evidence provided by the Government "only encompasses one incident in September 2019"; and that evidence outside of that time period, especially the evidence relating to the alleged killing in April 2019, would not be admissible against Elliott.[23]

Third, Elliott argues that a joint trial could lead to a violation of *Bruton v. United States*, since there could be statements from "non-testifying non-cooperating co-defendant(s)" that incriminate Elliott.[24] Elliott notes, however, that the Government "has not yet addressed whether there are confessions or statements" that might implicate *Bruton*.[25]

In Opposition, the Government argues that Elliott has not demonstrated prejudice and should not be severed.[26] The Government first notes that Elliot "has not identified any case where

---

[19] *Id.* at 9.

[20] *Id.*

[21] *Id.* at 10.

[22] *Id.* at 11.

[23] *Id.*

[24] *Id.* at 12; *Bruton v. United States*, 391 U.S. 123 (1968).

[25] Dkt. 223 at 12.

[26] Dkt. 226 at 5.

4

a defendant has so much as sought severance based solely on the Sixth Amendment," as opposed to pursuing a remedy through the Speedy Trial Act ("STA").[27] It also states that "it is not entirely clear how much additional delay will be incurred if Elliot remains joined with his codefendants," since trials are delayed for everyone due to the COVID-19 pandemic.[28]

Next, the Government argues that the *Barker* factors weigh against finding a Sixth Amendment violation.[29] As to the first factor, the Government argues that the approximately 15-month delay "is not extraordinary enough to weigh in favor" of finding a violation.[30] The Government points out that the case is a "complex, multi-defendant conspiracy case, where the charged conduct spanned years[.]"[31] Moving to the second factor, the Government argues that "Elliott bears primary responsibility for *all* of the delay incurred so far," since he requested the first continuance of trial and joined in subsequent continuance requests.[32] The Government also argues that delays caused by the COVID-19 pandemic are not attributable to the Government.[33] The Government states that the pandemic "forced the cancellation of numerous grand jury sessions," which limited its ability to seek a superseding indictment.[34] Furthermore, the Government argues, "spending approximately 11 months investigating before charging a large

---

[27] *Id.*

[28] *Id.* at 6.

[29] *Id.*

[30] *Id.* at 7.

[31] *Id.*

[32] *Id.* (emphasis in original).

[33] *Id.* at 7–8.

[34] *Id.* at 8.

5

narcotics conspiracy is hardly unusual."[35] Addressing the third factor, the Government argues that Elliott failed to assert his right "for over a year" and there is a "serious question as to whether Elliott can in fact be ready for trial in eight weeks[.]"[36] Finally, the Government argues that Elliott has not shown prejudice to satisfy the fourth factor.[37] The Government argues that "Elliott does not even suggest that further delay would impair the availability or reliability of defense witnesses, or otherwise hamper his ability to present a defense at trial."[38] Elliott's claimed prejudice, the Government states, appears to be the "unpleasant" nature of pretrial detention, which is insufficient.[39]

The Government next argues that Elliott's arguments about "spillover" evidence are unavailing.[40] The Government states that it plans to present evidence at trial to show that "Elliott was consistently involved in facilitating the distribution of narcotics in Anchorage over the entire course of the conspiracy."[41] And to the extent any evidence is inadmissible against Elliott, a limiting instruction to the jury would remedy the issue.[42]

---

[35] *Id.*

[36] *Id.* at 9.

[37] *Id.* at 9–10.

[38] *Id.* at 10.

[39] *Id.*

[40] *Id.* at 11.

[41] *Id.*

[42] *Id.* at 12.

6

Finally, the Government states that it "does not believe any of the evidence it intends to offer would violate Elliott's rights under *Bruton*."[43] The Government states that Elliott's "bare assertion" is not sufficient for severance.[44]

### III. LEGAL STANDARD

A. *Federal Rules of Criminal Procedure 8 and 14*

Federal Rule of Criminal Procedure ("Rule") 8 permits joinder of offenses and defendants. Separate offenses may be joined on one charging document if the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."[45] Multiple defendants may be charged together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."[46] Joinder is the rule rather than the exception.[47] In conspiracy cases, defendants jointly charged are presumed to be jointly tried.[48]

Severance under Rule 14, which guards against prejudicial joinder, is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants[.]"[49] A defendant seeking severance bears the heavy burden of showing that joinder is "so manifestly prejudicial that it outweigh[s] the dominant concern with judicial economy and

---

[43] *Id.*

[44] *Id.* at 12–13.

[45] Fed. R. Crim. P. 8(a).

[46] Fed. R. Crim. P. 8(b); *see, e.g.*, *United States v. Roselli*, 432 F.2d 879, 899 (9th Cir. 1970) (Rule 8(b) is intended to maximize trial convenience and efficiency with minimum prejudice.).

[47] *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980).

[48] *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980).

[49] *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

7

compel[s] the exercise of the court's discretion to sever."[50] To show "clear," "manifest," or "undue" prejudice, a defendant must "show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant."[51]

   B. *Sixth Amendment Right to a Speedy Trial*

"The Sixth Amendment guarantees that 'in all criminal prosecutions, the accused shall enjoy the right to a speedy trial.'"[52] Additionally, "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused."[53]

If a criminal defendant alleges a violation of his right to a speedy trial, the Court applies a four factor balancing test: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant."[54] The first factor is a "threshold issue" and the period between indictment and trial must typically be

---

[50] *United States v. Lopez*, 477 F.3d 1110, 1116 (9th Cir. 2007) (quoting *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir. 1976)); *Armstrong*, 621 F.2d at 954.

[51] *Escalante*, 637 F.2d at 1201.

[52] *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (internal alterations omitted) (quoting *Barker v. Wingo*, 407 U.S. 514, 515 n.1 (1972)); U.S. Const. amend VI.

[53] *Barker*, 407 U.S. at 519; *United States v. Lam*, 251 F.3d 852, 855 (9th Cir. 2001).

[54] *United States v. Gregory*, 322 F.3d 1157, 1161 (9th Cir. 2003) (citing *Barker*, 407 U.S. at 530–32).

longer than one year.[55] The second factor, the reason for the delay, is the "focal point" for the inquiry.[56] Deliberate delay "to hamper the defense" weighs heavily against the Government, whereas "'more neutral reasons such as negligence or overcrowded courts' weigh less heavily 'but nevertheless should be considered[.]'"[57] If the delay is caused by continuances made at the request of the defendant and their attorney, the case is complex, and new counsel is added, a court may find the delay justifiable.[58] The third factor, the assertion of speedy trial rights, is straightforward. However, a defendant's "prompt assertion" of his speedy trial rights "weighs neither for [n]or against" the defendant.[59] The fourth factor, prejudice, is fact-dependent.[60] If the length of delay is "great and attributable to the government," then no showing of prejudice is required.[61] However, if the delay is not great, then a defendant must show "actual prejudice," which is typically demonstrated by "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the [accused's] defense will be impaired."[62]

---

[55] *Id.* at 1161–62; *Brillon*, 556 U.S. at 90.

[56] *United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007).

[57] *Brillon*, 556 U.S. at 90 (internal alterations omitted) (quoting *Barker*, 407 U.S. at 531).

[58] *Id.*

[59] *Gregory*, 322 F.3d at 1162.

[60] *See id.*

[61] *Id.*

[62] *Id.* at 1163 (quoting *Doggett v. United States*, 505 U.S. 647, 654 (1992)); *Barker*, 407 U.S. at 531 ("Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.").

## IV. ANALYSIS

Elliott has not demonstrated that joinder of offenses or defendants was so manifestly prejudicial that severance is warranted. Elliott moves to sever on three separate grounds, each of which lacks merit.

### A. *Sixth Amendment Challenge*

Elliott argues that he should be severed and tried separately because failure to do so would result in a violation of his Sixth Amendment right to a speedy trial. The Court applies the four factor balancing test outlined in *Barker*: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant."[63] Applying the *Barker* test, the Court finds that Elliott's Sixth Amendment speedy trial right is not violated by being joined with his co-defendants for trial. The Court will analyze each factor in turn.

The first factor is a "threshold issue" and the period between indictment and trial must typically be longer than one year.[64] Measuring from the filing of the original Indictment to the time of trial,[65] the length of the delay exceeds one year, which is "presumptively prejudicial."[66] While the delay is sufficient to trigger the rest of the *Barker* analysis, the Court notes that Elliott

---

[63] *Gregory*, 322 F.3d at 1161 (citing *Barker*, 407 U.S. at 530–32).

[64] *Id.* at 1161–62; *Brillon*, 556 U.S. at 90.

[65] At the time of this Motion, the trial was scheduled for January 4, 2021. *See* Dkt. 166 (Minute Entry). However, on November 20, 2020, the Court vacated the trial date and scheduled a status conference for February 5, 2021. Dkt. 237 (Minute Entry).

[66] *Gregory*, 322 F.3d at 1162.

has not asserted any violation of the Speedy Trial Act.[67] The Court also finds that the 15-month delay that has elapsed only "stretches beyond the bare minimum needed to trigger judicial examination of the claim."[68] As a result, the Court finds that this factor does not weigh in Elliott's favor.

The second factor, the reason for the delay, is the "focal point" for the inquiry.[69] Deliberate delay or bad faith weighs heavily against the Government, while "more neutral reasons" weigh less heavily.[70] If the delay is caused by continuances made at the request of the defendant and their attorney, the case is complex, and new counsel is added, a court may find the delay justifiable.[71] Here, Elliott's primary argument is that the Government handed down the Superseding Indictment and an "evidence dump" approximately one year after the original Indictment, implying that the delay was the Government's fault.[72] The Government points out that the delay was either caused by Elliott, due to his requests or acquiescence to prior continuances, and/or the COVID-19 pandemic, which severely limited the Government's ability

---

[67] Compliance with the Speedy Trial Act "raises a strong presumption of compliance with the Constitution." *United States v. Baker*, 63 F.3d 1478, 1497 (9th Cir. 1995) (discussing with approval *United States v. Brainer*, 691 F.2d 691 (4th Cir. 1982)); *see also United States v. Belcher*, No. 16-CR-00211-LHK-2, 2017 WL 3721454, at *1 (N.D. Cal. Aug. 29, 2017) (noting that the trial date "complies with the Speedy Trial Act" and that the length of the delay was only "slightly longer than the one-year threshold," and concluding first *Barker* factor weighed against defendant).

[68] *Doggett*, 505 U.S. at 652.

[69] *King*, 483 F.3d at 976.

[70] *Brillon*, 556 U.S. at 90 (internal alterations omitted) (quoting *Barker*, 407 U.S. at 531).

[71] *Id.*

[72] Dkt. 223 at 9.

11

to obtain a Superseding Indictment or the Court's ability to hold a trial.[73] The Court finds that the delay between the original and Superseding Indictment was justifiable, given the constraints posed by the COVID-19 pandemic,[74] and further finds that Elliott's agreement to prior continuances weighs against his Sixth Amendment challenge. Elliott has likewise not alleged or presented any evidence of bad faith on the part of the Government. Accordingly, the Court finds that the second *Barker* factor weighs against Elliott.

The third factor is the defendant's assertion of his right to a speedy trial.[75] Elliott notes that he is "asserting his right to a speedy trial through this request[.]"[76] The Government points out that Elliott had not asserted his right to a speedy trial for over a year and that it doubts Elliott would have been able to adequately prepare for the January 2021 trial.[77] The Court finds that while this factor is not the focal point of the inquiry, it weighs against Elliott because he agreed to continuances in the case and is only now asserting his right to a speedy trial, in an attempt to sever his case and leapfrog the November 8, 2021 trial date.

Finally, the fourth factor is prejudice to Elliott.[78] Since the delay is not attributable to the Government, Elliott must show "actual prejudice," which is typically demonstrated by "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the [accused's]

---

[73] Dkt. 226 at 7–8.

[74] *See, e.g.,* Dkts. 136 (Text Order Resetting Trial); 166 (finding excusable delay under the Speedy Trial Act).

[75] *Gregory*, 322 F.3d at 1161 (citing *Barker*, 407 U.S. at 530–32).

[76] Dkt. 223 at 9.

[77] Dkt. 226 at 9.

[78] *Gregory*, 322 F.3d at 1161 (citing *Barker*, 407 U.S. at 530–32).

12

defense will be impaired."[79] Elliott argues that the delay is prejudicial because he must remain incarcerated and subject to the "unprecedented and extraordinary dangers" of COVID-19 and the risk of an outbreak in prison.[80] The Government argues that "Elliott has not articulated any condition that would not apply in equal measure to every other inmate" and the general conditions or inconveniences of pretrial detention are "insufficient to demonstrate prejudice[.]"[81] The Government also notes that Elliott does not argue that further delay would impair his ability to put on a defense at trial.[82] The Court finds that generalized risks and fears associated with COVID-19 are not sufficient to demonstrate actual prejudice.[83] Therefore, the Court finds that the fourth factor weighs against Elliott.

Considering the *Barker* factors as a whole, the Court concludes that Elliott's Sixth Amendment right to a speedy trial has not been violated.

B. *Spillover Evidence*

The Court finds that Elliott has not demonstrated that the alleged "spillover" evidence would prejudice his right to a fair trial. "In assessing whether joinder was prejudicial [under Rule 14], of foremost importance is whether the evidence as it relates to the individual defendants is easily compartmentalized. Central to this determination is the trial judge's diligence in instructing

---

[79] *Id.* at 1163 (quoting *Doggett v. United States*, 505 U.S. 647, 654 (1992)); *Barker*, 407 U.S. at 531.

[80] Dkt. 223 at 10.

[81] Dkt. 226 at 10.

[82] *Id.* The ability to put on a defense is the "most serious" of the three ways that actual prejudice can be shown. *See United States v. Sutcliffe*, 505 F.3d 944, 957 (9th Cir. 2007).

[83] *See Sutcliffe*, 505 F.3d at 957 ("anxiety and concern" is generally insufficient to show unconstitutional prejudice).

13

the jury on the purpose of the various types of evidence."[84] The prejudicial effect of evidence in a joint trial can be "neutralized by careful instruction by the trial judge."[85]

Here, Elliott argues that "the evidence provided by the Government . . . only encompasses one incident in September 2019."[86] Elliott argues that the evidence of his involvement is limited to September 2019, so any evidence that implicates him prior to that time period would be prejudicial.[87] However, the Government disagrees and argues that "at trial, the [G]overnment anticipates presenting evidence . . . that Elliott was consistently involved in facilitating the distribution of narcotics in Anchorage over the entire course of the conspiracy." Indeed, the Superseding Indictment alleges that beginning in or about January 2017, Elliott and his co-defendants "knowingly and intentionally combined, conspired, confederated and agreed together and with each other . . . to distribute and to possess with intent to distribute a controlled substance[.]"[88] Elliott's temporal argument must fail because the allegation against Elliott is not limited to only September 2019, but rather, spans the full length of the alleged conspiracy. Elliott has not described any specific evidence at issue nor demonstrated that potential prejudice cannot be cured by sufficient jury instructions.[89] The Court therefore finds that an alleged risk of spillover evidence provides no basis for severance at this time.

---

[84] *United States v. Vasquez-Velasco*, 15 F.3d 833, 845–46 (9th Cir. 1994) (internal citations omitted).

[85] *Escalante*, 647 F.2d at 1201.

[86] Dkt. 223 at 11.

[87] *Id.*

[88] Dkt. 189 at ¶ 15.

[89] *See, e.g.*, *United States v. Lew*, No.: 2:17-CR-00021-JCM-GWF, 2018 WL 4119909, at *5 (D. Nev. Aug. 29, 2018) (noting that there is a "heavy burden" to establish grounds for severance, and

*C. Bruton Issues*

Elliott argues that there may be *Bruton* statements in the Government's possession and that "Elliott has no way to reassure by review of his own discovery that *Bruton* statements do not exist."[90] The Government states that it "does not believe any of the evidence it intends to offer would violate Elliott's rights under *Bruton*."[91] Elliott fails to point to specific evidence indicating a *Bruton* issue and the Government represents no co-defendant statements to be used in this case would violate *Bruton*. Elliott's suggestion that *Bruton* statements may exist, despite the Government's representation to the contrary and absent any evidence that such a statement does exist, fails to demonstrate manifest prejudice.[92] The Court declines to sever on this basis.

//

//

//

//

//

//

---

denying motion to sever because defendant did not describe "the nature or volume of the evidence" that would be prejudicial); *United States v. Guirguis*, No. 17-00487 HG, 2018 WL 4624802, at *4 (D. Haw. Sept. 26, 2018) (denying motion to sever because defendant had "not demonstrated with sufficient particularity how he will be prejudiced due to spillover evidence and why a limiting instruction would not cure the potential risk of prejudice.").

[90] Dkt. 223 at 12.

[91] Dkt. 226 at 12.

[92] *See Richardson v. Marsh*, 481 U.S. 200, 209–10 (1987); *see also United States v. Yarborough*, 852 F.2d 1522, 1537 (9th Cir. 1988); *see also United States v. Correia*, No. 2:17-cr-00001-JDA-CWH, 2018 WL 3242688, at *2 (D. Nev. July 2, 2018) ("Mere speculation that some unidentified statement might create a *Bruton* problem in the future does not meet the burden of overcoming the strong presumption in favor of joinder").

15

## V. CONCLUSION

A defendant seeking severance bears the heavy burden of showing that joinder is "so manifestly prejudicial that it outweigh[s] the dominant concern with judicial economy and compel[s] the exercise of the court's discretion to sever."[93]  Elliott has not met his burden.

For the foregoing reasons, Elliott's Motion to Sever at Docket 222 is **DENIED without prejudice.**

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 5th day of February, 2021.

/s/  *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[93] *Lopez*, 477 F.3d at 1116 (internal quotation marks and alterations omitted); *Armstrong*, 621 F.2d at 954.